UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD KENNY WOODSON,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTY BING et al.,<br><br>    Defendants. | Case No. 3:24-cv-00085<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Richard Kenny Woodson brought this action asserting claims arising out of his prosecution for first-degree murder and especially aggravated battery—charges on which he was found not guilty—and the resulting media coverage against Defendants Clarksville Police Department Detective Christy Bing, Montgomery County Assistant District Attorney Kayla McBride, Montgomery County Circuit Court Judge William R. Goodman, the State of Tennessee, online newspaper Clarksville Now, and the Clarksville Montgomery Justice System. (Doc. No. 1.) Clarksville Now, McBride, Goodman, and the State have moved to dismiss Woodson's claims against them. (Doc. Nos. 4, 8, 11.) Woodson has not responded in opposition to the motions to dismiss.

After the Court ordered Woodson to show cause why it should not dismiss his claims under Federal Rule of Civil Procedure 41(b) for failure to prosecute (Doc. No. 14), Woodson filed a motion for leave to file an amended complaint. (Doc. No. 18.) No defendant has responded in

opposition to Woodson's motion for leave to amend. Woodson has not responded to the Court's show-cause order.

The Court referred this action to the Magistrate Judge for case management and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 13.) For the reasons that follow, the Magistrate Judge will recommend that the Court dismiss this action sua sponte under Federal Rule of Civil Procedure 12(h)(3) because the Court lacks subject-matter jurisdiction over Woodson's claims, terminate the defendants' motions to dismiss as moot, and deny Woodson's motion for leave to amend his complaint without prejudice for failure to comply with the Court's Local Rules.

## I. Background

### A. Factual Background

This action arises out of Woodson's prosecution in Montgomery County, Tennessee, for first-degree murder and especially aggravated burglary related to his alleged role in a deadly home invasion that took place in 2019.[1] (Doc. Nos. 1, 1-1.) A jury found Woodson not guilty of all charges on January 30, 2023. (*Id.*) However, Woodson alleges that he "spent three (3) years of [his] life behind bars" in pre-trial detention "as an innocent man" before "a jury of [his] own peers" returned the "not guilty verdict . . . ." (Doc. No. 1, PageID# 5, 6.)

---

[1] Woodson attached to his complaint what appears to be partial screenshots of a news article published in *Clarksville Now* (Doc. No. 1-1). *See* Jordan Renfro, *Home invasion slaying: Woodson found not guilty in robbery that left intruder, victim dead*, *Clarksville Now* (Feb. 8, 2023), https://clarksvillenow.com/local/home-invasion-slaying-woodson-found-not-guilty-in-robbery-that-left-intruder-victim-dead/. The Court takes judicial notice of the complete article as context for Woodson's claims. *United States v. Allstate Ins. Co.*, 620 F. Supp. 3d 674, 685 (E.D. Mich. 2022) (taking judicial notice of news article); *see also U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (finding it appropriate to take judicial notice of public documents from reliable sources on the internet).

Although Woodson includes the State of Tennessee and the Clarksville Montgomery Justice System in the caption of his complaint, he does not list them as named defendants in the form complaint. (Doc. No. 1.) Woodson also does not include any allegations against the State or the Clarksville Montgomery Justice System in the body of his complaint. (*Id.*)

Woodson makes the following allegations against Bing, McBride, Goodman, and Clarksville Now in his statement of claim:

> 1) Detective Christy Bing – Detective Bing knowing[ly] put out false information to my wife, family and friends to try to convince them that I was guilty, because she had an assumption that I was guilty. [Ig]noring the evidence[,] she made up a story to support her version of events, even though I reported to her I was a victim of the robbery / crime as well. She used "[hearsay][ ]" from people that I did not even know to write statements against me. The recordings of witnesses from the initial interview were changed when statements were taken at a later time. Even the two codefend[a]nt[s], who admitted lying under oath, were granted probation even thou[gh] they admitted to the home invasion and one even admitted to shooting and killing the home[ ]owner ([m]y childhood friend), just to change their statements and testify against me. She had it in for me, because I refused to take a plea deal. She made th[r]eats towards me because I would not do and say what she wanted me to say. She mis[ ]represented the truth to p[u]rsue a sealed indictment for my arrest. She gave information to Clarksville Now linking me to the murders in the early stages of the inve[s]tigation. She did her best to slander my name turning the community against me, going as far as to put [m]y picture on a bill[ ]board.
>
> 2) DA Kayla McBride - After being assigned to my case and reviewing all the evidence, to include the coaching of the codefend[a]nts (as written in the transcripts) she ignored the facts that they were lying and had to be told what to say and yet she still pursued the lie. She willfully put witnesses on the stand (Sandra Longfellow) to out[ ]right lie (when 911 call revealed the truth). She had no regard for my life, even after the not guilty verdict came in and a jury of my own peers found me innocent, [ ] McBride went back to the news[ ]paper casting [doubt] on my name and the verdict, knowing this would have negative consequenc[ ]es for my family safety and my life. She reli[ti]gated the trial from a bias position which was posted in the paper (Clarksville Now). She knew this case should have never gone to trial.
>
> 3) Judge William R Goodman – The judge accepted an open plea from the two co-defendant[s], who were the actual offenders and murders and he gave them probation and was trying me for murder. He allowed hear[ ]say evidence to be admitted against me, but shut it down from witnesses testifying on my behalf. Even when it was obvious that the witnesses against me were lying and the evidence was being fab[r]icated, he permitted it and said we could bring it up on the appeal

process, indicating a bias. I was not innocent until proven guilty, it was just the opposite. [Goodman] appeared to be unfair in his ruling, siding with [McBride] a majority of the time.

4) Clarksville Now - This [newspaper] put false information out about [me] that was not true (per the a[ ]rticle in the paper January 2, 2020)[.] They label[ed] me a su[ ]spect for a crime that I was a victim. They fail[ed] to do their due diligence in sources and fact finding. They were quick to repeat the lie with no men[t]ion of me being innocent until proven guilty. They misrepresented the truth and p[ ]ublished slanted information p[or]traying me as guilty. My family was threaten[ed], my children were confronted in school, made to feel ashame[d] and embarrassed because of what was published by this well[-]know[n] paper both in print and on[ ]line. They never retracted what they wrote, even after I was found [not] guilty, they damaged my name in this community for years to come; even now that I am out my customers never reconnected for me to cut their hair or their children's hair. A good name is hard to hold on to[ ].

(*Id.* at PageID# 5.)

Woodson states that "nothing can relieve the pain and suffering [he] endured during [his] years of captivity" but that there are "many forms of relief that can lessen the pain of having to deal with being imprisoned falsely" for three years. (Doc. No. 1, PageID# 6.) Specifically, Woodson cites lost wages from his work as a master barber "in excess of $126,000.00" and as a church janitor "which lost wages would total $18,000.00[.]" (*Id.*) Woodson appears to request additional damages in an unspecified amount and "counseling" to compensate for emotional distress. (*Id.*) He does not request injunctive relief against any of the named defendants. (Doc. No. 1.)

B.  **Procedural History**

Woodson initiated this action on his own behalf using a form complaint for a civil case and paid the civil filing fee. (Doc. Nos. 1, 1-2.) Woodson obtained summonses for Clarksville Now, the Clarksville Montgomery Justice System, Goodman, Bing, and McBride. (Doc. No. 3.) Woodson returned executed summonses for Clarksville Now and Goodman (Doc. Nos. 16, 17), and an unexecuted summons for Bing that stated Bing had refused to sign a certified mail receipt

(Doc. No. 15). Woodson did not return executed summonses for McBride, the State, or the Clarksville Montgomery Justice System. Regardless, counsel appeared for McBride and the State. (Doc. Nos. 7, 10.) The Clarksville Montgomery Justice System has not appeared in the action.

Clarksville Now filed a motion to dismiss Woodson's claims against it arguing that Woodson has not alleged that it violated any federal law. (Doc. Nos. 4, 5.) Clarksville Now argues in the alternative that Woodson's claims are barred by the one-year statute of limitations for defamation claims under Tennessee law. (*Id.*)

McBride moved to dismiss Woodson's claims against her on grounds that she is afforded immunity under the Eleventh Amendment for Woodson's claims against her in her official capacity and afforded prosecutorial immunity for his claims against her in her individual capacity. (Doc. Nos. 8, 9.) McBride also argues that Woodson has failed to state a claim of defamation against her because he has not identified any specific statement by McBride that carried a defamatory meaning. (*Id.*)

Goodman and the State of Tennessee also moved to dismiss Woodson's claims against them. (Doc. Nos. 11, 12.) They argued that Eleventh Amendment immunity bars Woodson's claims against the State and against Goodman in his official capacity. (*Id.*) Goodman further argues that absolute judicial immunity bars Woodson's claims for damages against him in his individual capacity because Woodson's allegations address Goodman's work performing a judicial function and do not show that Goodman was acting in a clear absence of jurisdiction. (Doc. No. 12 (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991).)

On April 19, 2024, the Court issued an order finding that Woodson's response to Clarksville Now's motion to dismiss was due to be filed no later than March 3, 2024; that his responses to McBride and Goodman and the State's motions to dismiss were due to be filed no

later than March 8, 2024; and that Woodson had not responded in opposition to any of the motions. (Doc. No. 14.) Recognizing Woodson's pro se status, the Court afforded him "an opportunity to show cause why his claims against [these defendants] should not be dismissed" under Rule 41(b) for failure to prosecute and ordered Woodson to show cause "by May 3, 2024, why the Court should grant him leave to file an untimely response to these defendants' motions . . . ." (*Id.*) The Court ordered Woodson to file any response in opposition to McBride's, Goodman and Tennessee's, and Clarksville Now's motions to dismiss by May 3, 2024, and warned him "that failure to comply with this Order to Show Cause [would] likely result in a recommendation that this action be dismissed." (*Id.* at PageID# 53–54.)

On May 3, 2024, Woodson filed a motion for leave to file a first amended complaint. (Doc. No. 18.) Woodson states in the motion that he "did not have the opportunity to timely respond" to the motions to dismiss. (*Id.* at PageID# 62, ¶ 3.) Woodson states that he "provided the Court with an explanation" for his failure to respond in a "Response to the Court's Order to Show Cause," but Woodson has not filed a response to the show-cause order. Woodson states that "[i]f the Court elects to let [his] Complaint stand, [he] seeks to file a First Amended Complaint" and "believes that his case would be successful on the merits if allowed to amend the Complaint and proceed with suit against [the] Defendants." (*Id.* at PageID# 62, 63, ¶¶ 4, 7.) Woodson did not attach a proposed amended complaint to his motion for leave to amend. Woodson also did not respond to any of the motions to dismiss.

II. **Legal Standard**

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the

6

Case 3:24-cv-00085   Document 19   Filed 07/30/24   Page 6 of 14 PageID #: 70

United States," and several other categories of cases not at issue here.[2] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.

Whether the Court has subject-matter jurisdiction is a "threshold" question in any action, *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), and a court must assure itself of jurisdiction sua sponte even if the parties do not raise the issue, *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). The party asserting jurisdiction bears the burden of establishing it. Ammons v. Ally Fin., Inc., 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018).

A motion to dismiss on jurisdictional grounds "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the

---

[2] For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

**III.    Analysis**

    **A.    Subject-Matter Jurisdiction**

Only Clarksville Now has argued that the Court lacks subject-matter jurisdiction over Woodson's claims against it. (Doc. No. 5.) However, the Court must assure itself of its jurisdiction over Woodson's claims against all defendants before addressing any of the defendants' merits-based arguments. *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) (holding that "the first and fundamental question is that of jurisdiction" and that "[t]his question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it"); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) ("Courts must resolve questions of subject matter jurisdiction before ruling on the merits of the claim."); *George v. Haslam*, 112 F. Supp. 3d 700, 706 (M.D. Tenn. 2015) ("[A] court must address 'questions pertaining to its jurisdiction before proceeding to the merits[.]'" (quoting *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005))).

Woodson asserts that the Court has federal question jurisdiction over his claims. (Doc. No. 1.) "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Hudgins Moving & Storage Co. v. Am. Express Co.*, 292 F. Supp. 2d 991, 1002 (M.D. Tenn. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Although this rule focuses on the plaintiff's allegations, "it allows a court to look past the words of a complaint to determine whether the allegations, no

8

Case 3:24-cv-00085    Document 19    Filed 07/30/24    Page 8 of 14 PageID #: 72

matter how the plaintiff casts them, ultimately involve a federal question." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008).

Where the form complaint asks Woodson to provide the basis for that jurisdiction by "list[ing] the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case[,]" Woodson states:

> In T[ennessee], the common law remains codified at Tenn. Code [Ann. §] 20-4-101(b). It says that if the plaintiff and defendant reside in the same county, venue is set there or where the cause of action arose. . . . Jurisdiction of this Honorable Court and Venue is proper as the unlawful practices occurred in Montgomery County (Middle District of Tennessee) and/or the Plaintiff resides in this district at the time of the alleged acts.

(*Id.* at PageID# 3.)

The statute Woodson cites is a provision of Tennessee law, not federal law, and does not give rise to federal question jurisdiction. Instead, Tennessee Code Section 20-4-101 addresses the venue of "all civil actions of a transitory nature" brought in Tennessee state courts. Tenn. Code Ann. § 20-4-101(a). Specifically, Section 20-4-101(b) provides that, if "the plaintiff and defendant both reside in the same county in this state, then the action shall be brought either in the county where the cause of action arose or in the county of their residence." Tenn. Code Ann. § 20-4-101(b). Woodson thus has not identified a federal statute, treaty, or constitutional provision at issue in his claims that provides a basis for federal question jurisdiction.

Further, construing his allegations liberally in light of his pro se status, the Court finds that Woodson has failed to establish any other basis for federal question jurisdiction. Woodson does not cite any federal statute or constitutional provision as the source of any cause of action raised in his complaint and has not alleged that the defendants' conduct violated any federal right. *Cf. Mullen v. City of LaVergne*, No. 3:16-00950, 2017 WL 931651, at *2 (M.D. Tenn. Mar. 9, 2017) (finding that "[a] mere incidental reference to a violation of federal law or the United States

Constitution" is insufficient to create a federal cause of action). Woodson also does not cite any provision of Tennessee law other than its venue statute. However, again construing Woodson's allegations liberally in recognition of his pro se status, it appears that he intends to raise claims under Tennessee law.

For example, Woodson alleges that Bing "knowing[ly] put out false information to [Woodson's] wife, family and friends to try to convince them that [he] was guilty," "mis[ ]represented the truth to [pursue] a sealed indictment for [his] arrest[,]" "gave information to Clarksville Now linking [him] to the murders in the early states of the inve[s]tigation[,]" and "did her best to slander [his] name turning the community against [him] . . . ." (Doc. No. 1, PageID# 5, ¶ 1.) Woodson alleges that McBride "ignored the facts" in prosecuting Woodson, "put witnesses on the stand . . . to out[-]right lie," and "went back to the news[ ]paper casting double on [Woodson's] name and the verdict, knowing this would have negative consequences for [his] family safety and [his] life." (*Id.* at ¶ 2.) Woodson alleges that Goodson accepted pleas from Woodson's co-defendants (who Woodson states were "the actual offenders and murderers") and sentenced them to probation while trying Woodson for murder; allowed hearsay evidence to be admitted against Woodson but "shut it down from witnesses testifying on [Woodson's] behalf"; showed bias by telling Woodson he could raise errors on appeal and "siding with the DA a majority of the time." (*Id.* at ¶ 3.) And Woodson alleges that Clarksville Now "put false information out" and "fail[ed] to do their due diligence in sources and fact finding[,]" "misrepresented the truth and published slanted information p[or]traying [him] as guilty[,]" and "never retracted what they wrote," causing harm to Woodson's reputation. (*Id.* at ¶ 4.) To the extent these allegations correlate

to particular causes of action, they are best understood as supporting claims of defamation, false light, or malicious prosecution, all of which are tort claims under Tennessee law.[3]

"It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (identifying the "'well-pleaded complaint rule'" as "the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts"). Because Woodson has identified only Tennessee law in his complaint, and because his allegations are most readily construed as supporting state-law claims, neither the Court nor the defendants can refashion his claims as federal causes of action. *See McBrearty v. Kentucky Cmty., Tech. Coll. Sys.*, No. CIV.A. 06-CV-197KSF, 2006 WL 2583375, at *6 (E.D. Ky. Sept. 7, 2006) (noting that, "[w]here a plaintiff chooses to assert only state law claims, recharacterizing [them] as [] federal claim[s] is generally prohibited"). Goodman and McBride argue in passing that any claims Woodson made against them under 42 U.S.C. § 1983 would fail because they are not considered "persons" capable of being sued under that statute when named in their official capacities. (Doc. Nos. 9, 12.) But Goodman and McBride do not develop these arguments, and the Court finds no basis in Woodson's complaint to construe his claims as arising under § 1983. Woodson does not mention that statute or allege that the defendants have violated any right under the Constitution or another federal law. *See Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 881 (6th Cir. 2002) ("Plaintiff's failure to raise § 1983 explicitly in her complaint might not necessarily preclude a federal constitutional claim in all circumstances, but in this case it is clear that Plaintiff did not intend to assert a claim under the federal Constitution."); *see also Sales v. Dillon*, No. 3:23-cv-

---

[3] The Court makes no finding as to whether Woodson has adequately pleaded any claim under Tennessee law against any defendant.

00039, 2023 WL 3467744, at *4 (M.D. Tenn. May 15, 2023) (finding "the omission of any reference to Section 1983 is telling" "[i]n discerning whether a federal claim is affirmatively alleged" and remanding complaint to state court).

Because Woodson has not alleged any federal claims against any defendant, the Court does not have federal question jurisdiction over his case.[4] Having reached this conclusion, "'the only function remaining to the court is that of announcing the fact and dismissing the cause.'"[5] *Steel Co.*, 523 U.S. at 94 (1998) (quoting *McCardle*, 7 Wall. at 514). The Court need not—and should not—address the defendants' other arguments in support of their respective motions to dismiss. Instead, the Magistrate Judge will recommend that the Court dismiss Woodson's action without prejudice for a lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).

**B.      Woodson's Motion to Amend the Complaint**

Woodson filed a motion to amend his complaint arguing "that his case would be successful on the merits if allowed to amend . . . ." (Doc. No. 18, PageID# 63, ¶ 7.) Woodson argues that his motion is not made "in bad faith" and that granting it would not "cause any undue delay or burden . . . ." (*Id.* at ¶ 6.) Clarksville Now, McBride, Goodman, and Tennessee have not responded in opposition to Woodson's motion.

Generally, a party's failure to respond in opposition to a motion will result in the motion being granted as unopposed. M.D. Tenn. R. 7.01(a)(3). Here, however, the Court cannot grant

---

[4]      Because Woodson has not established federal question jurisdiction over any claims against the Clarksville Montgomery Justice System—or included any allegations about its actions in his complaint—dismissal of Woodson's claims against it is appropriate even though it has not appeared in the action.

[5]      Woodson does not assert diversity jurisdiction under 28 U.S.C. § 1332(a) and, because Woodson alleges that all the parties are residents of Tennessee (Doc. No. 1), there is no basis to consider whether diversity jurisdiction exists.

Woodson's motion to amend because the motion is not procedurally proper under the Court's Local Rules and Woodson has not provided a proposed amended complaint. Local Rule 15.01(a)(1) provides that a motion to amend a complaint must "[d]escribe the reasons supporting the proposed amendments and the substance of the amendments sought[.]" M.D. Tenn. R. 15.01(a)(1) (supporting papers). It further requires that a motion to amend "include as an appended exhibit the signed proposed amended pleading[.]" *Id.* Woodson's motion to amend is not accompanied by the required proposed amended complaint and does not describe the substance of the amendments sought. (Doc. No. 18.) The Court will therefore recommend that Woodson's motion to amend be denied. *See Hamby v. Parker*, Case No. 3:17-cv-01596, 2020 WL 1640429, at *2 (M.D. Tenn. Apr. 2, 2020).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that this action be DISMISSED WITHOUT PREJUDICE under Federal Rule of Civil Procedure 12(h)(3) for a lack of subject-matter jurisdiction and that the defendants' motions to dismiss (Doc. Nos. 4, 8, 11) be TERMINATED AS MOOT. The Magistrate Judge further RECOMMENDS that Woodson's motion for leave to file an amended complaint (Doc. No. 18) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 30th day of July, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge